May it please the court, Mr. Kern. I'm Clemens Erdahl, and it's my privilege to represent Corey Keys before this appellate court. Corey Damon Keys was sentenced to 151 months of imprisonment because the government failed to disclose proper interviews of two cooperating individuals that it had obtained before sentencing. The government knew about this exculpatory evidence and did not disclose it to Mr. Keys as required by the 14th Amendment. Due process requires the government to disclose to Mr. Keys any favorable evidence that is material to either his guilt or punishment. In Mr. Keys' case, had the government properly disclosed to the defense the evidence proffered by these individuals, there's a reasonable probability that the sentencing result would have been different. Let me interrupt you to say, can you tell me when Mr. Keys, the defense, or Mr. Keys' lawyer first really learned of these proper interviews? It was after the appeal. Okay, after the appeal. Yes, I was the attorney. Okay, great. Was it a long time after the appeal or a short time after the appeal? It was a few months. The way it happened, if I might, was that Mr. Keys had found out while incarcerated that certain pleas had gone through. Those pleas didn't go through until later on, even though the proffers had been taken at a time when the evidence could have been helped. Thank you. Now, there are two proffers. I'm going to refer to them. Judge Jarby refers to the head of the conspiracy by his last name, but we have sealed documents here, so you'll note in the briefs we're generally talking about J.F., the head of the conspiracy, and A.H., an individual who was not part of the conspiracy but was in prison with Mr. Keys during a crucial time. I'm going to refer to them as John and Anthony because I have problems dealing with initials and keeping track of who's who, and I think that will be helpful to the court. Unbeknownst to Corey Keys, after he pleaded guilty but before he was sentenced, the government conducted proffer interviews with two of Mr. Keys' associates, John on January 31, 2014, and Anthony on March 17, 2014. The sentencing took place, I believe, in May. There was one hearing in April and one in May, so this was before the sentencing. There were two more proffers taken of John between the sentencing and the direct appeal in the case. Anthony stated in his proffer that while incarcerated with Keys in state prison, that Keys informed him of John's ongoing drug distribution operation in Burlington, Iowa, and that Keys asked Anthony to protect John when Anthony got out of prison. Anthony also stated that John took care of Keys while Keys was in prison and that Keys was John's right-hand man. John stated that he began obtaining cocaine with Keys beginning in 2006, so before the two state charges were entered. The proffers provided pertinent material evidence of the ongoing drug conspiracy that would place Keys' prior 2008 and 2009 state convictions within the same common scheme or course of conduct as the instant offense and thereby should have prevented an increase to his criminal history points and ultimately designating him as a career offender. However, the government absolutely failed to disclose this evidence to Keys and to the sentencing court when it would have been useful. Now counsel, in the brief back in that first appeal to us and even at the sentencing hearing, doesn't Keys and his attorney, don't you acknowledge that there was an ongoing conspiracy with Fenton that went back to 2007 before the convictions in 2008 and 2009? And isn't a fair reading of the brief and everything done then, you didn't know about the proffers but you knew the basic facts? Those were the facts that we were trying to promote to the sentencing court. We were promoting the fact that there was a conspiracy. It's a little bit backwards from what we usually do. For instance, in the Milo Davis case I had before this court, we were arguing that there were multiple conspiracies and Mr. Davis was incarcerated on two occasions. But we were told, no, there weren't multiple conspiracies. It was a hub and spokes. And Milo Davis was involved and different people came in and went out. But the conspiracy went on for this time, including his two incarcerations. The argument to the sentencing court was the fact that the government argued that he was incarcerated. Therefore, the conspiracy was over. That's contrary, as Judge Loken said during the direct appeal, to the classic law of conspiracy. You have to withdraw from it and you have to not be involved in activities that further the conspiracy. Here the proffers point out that Mr. Keyes was active in the conspiracy during his incarceration and after he got out. The fundamental problem here is that the habeas court not only failed to hold a hearing on this motion but made that decision based simply on the face of the withheld proffers. So a great deal more evidence could have been presented at a hearing. There were five officers who took the proffers. There were 11 named associates from John's drug trafficking organization that were mentioned in the proffers. And, of course, you had the two cooperating individuals. So there are 18 potential witnesses in the associated notes and exhibits that go with that. Instead, Judge Jarvie simply said, well, it's not clear. It might have been helpful, but there are some contradictions. And that's not what has to happen. In the White v. Helling case, which was also a habeas appeal involving exculpatory evidence, and the White case was cited to the habeas court below, and I may need to do a 28-J letter. I just noticed last night it wasn't in the briefs. But in White, this appellate court said that it was not only the police reports, which had been hidden for 18 years, that were material, but the police notes and questions which could have been asked on cross-examination to which the exculpatory evidence may have led. An evidentiary hearing is required unless the court determines that the files and records of the case conclusively show the prisoner is entitled to no relief. Here we have a prima facie case, because as Judge Jarvie in his own order goes through, he says, well, it's unclear. He uses the term it's unclear how much it would have helped. But to be sure, the interviews are at least somewhat helpful to the defendant, because they support Key's ongoing participation. John's proffers establish Key's involvement prior to incarceration. Anthony's proffers support Key's involvement, well, he doesn't say his involvement in the same conspiracy during and after his incarceration. So I want to be clear that the antecedent for his is my client, Mr. Keys, because there's no evidence that Anthony was a member of the conspiracy. So when he refers to Key, so let me read it again. John's proffers establish Key's involvement prior to incarceration. Anthony's proffers support Key's involvement in the same conspiracy during and after Key's incarceration. So we have before, during, and after, and yet we get no hearing. And it seems to me the statute is very clear that at that point the court had to have a hearing in order to allow us to ferret out what evidence was available from these proffers. It's not, as the White case makes very clear, it's not just the exculpatory evidence that's hidden from the defendant that is available. It's what else may have come from that. And Judge Richard Arnold was very clear in stating that in the White case. And I will send a 28-J letter on that. I would like to reserve the rest of my time. You may. Mr. Kern? Good morning. May it please the court, Mr. Erdahl, I'm Adam Kern, Assistant United States Attorney from the Southern District of Iowa, on behalf of Appley in this case. I'd like to start referring to a couple of the items Mr. Erdahl talked about. I want to be clear, Mr. Keyes was not sentenced to 151 months because the government did not disclose these two proffer letters. Mr. Keyes was sentenced to 151 months because that was the sufficient but not greater than necessary sentence that the district court determined based upon the totality of this record. An evidentiary hearing at the district court level is not required based upon the record in this case, Your Honor. An evidentiary hearing is required, is not required, and the district court can summarily dismiss if it's clear that the defendant is not entitled to relief. And as my brief lays out, Mr. Keyes fails to establish materiality. He fails to establish materiality because there's no reasonable probability that Mr. Keyes would have received less than 151 months if these two proffers, amongst the mass of information that was presented at the sentencing hearing, had been disclosed. In short, the defendant cannot meet the materiality prong that he's required and it is his burden to meet. That the proffers were material to the outcome of the sentencing, they were not. There are three independent lines of reasoning that support that these two proffers were not material to the outcome. This court can affirm based upon any of those three rationales. I'll start with the rationale that 151 months would have been the district court's sentence even if Keyes was not technically a career offender under the guidelines. The district court said that twice at the sentencing when it denied the 2255 relief sought by Mr. Keyes. And the district court said very clearly that that was the case. The evidence in the proffers would not have had any impact on the outcome of the sentencing hearing. The district court detailed as to why it would have applied that heightened career offender guidelines range to Mr. Keyes even if he technically was not a career offender. Because his behavior illustrated, quote, an obvious incorrigibility warning and upward departure. The district court noted multiple times that Keyes engaged in a conspiracy to distribute cocaine mere days after release from three and a half years in prison for multiple trafficking of cocaine crimes. The district court said that a lower range would not reflect the seriousness of the offense. Keyes passed criminal conduct in the likelihood of recidivism. I would point to the court. I'm very familiar with the history here. I indicted this case in 2013 when I was a special assistant United States attorney at Davenport. Mr. Keyes had a conviction in 2005 for trafficking cocaine. He had a conviction in 2008 for trafficking cocaine. He had a conviction in 2009 for trafficking cocaine. These were all state convictions in the state of Iowa. He then went to prison continuously for three and a half years and then he got out and he trafficked cocaine. This is certainly a reasonable decision by the district court to determine whether or not technically career offender applies. 151 months is the just sentence in this case. I would point to what I found to be a very succinct and well-written portion of the district court's denial of the 2255 case here. It's page five of Judge Jarvie's opinion and it really encapsulates what we have here. There's no materiality because the court said clearly twice this is what we would have done. We need not go too far into the weeds as to whether career offender technically applies. And every time you've said technically so many times I've got to call you on it. You mean legally, whether you are or aren't. Because career offender, you either are or you aren't, right? I agree, Your Honor. Okay, proceed. And so page five, which is appendix page five that the government submitted, this is Judge Jarvie laying out again the reasons. And he says the defense cannot meet materiality because this is the sentence I would have given even if legally career offender did not apply. So I ask what would change if this court were to send this case back to the district court for reconsideration from one aspect or another? I firmly believe that 151 months will be the outcome. This court can stop its analysis if it believes that there's no reasonable probability based upon Judge Jarvie's explanations with respect to why he gave Mr. Keyes 151 months. However, if this court decides to move on, there are other independent rationale that could support an affirmation of the district court. And I'm referring to the parts of the brief that talk about the application note. The application note, as the State Circuit has addressed on direct appeal, indicate that application note eight, which I believe now changed to application note 5C in the new guidelines, this court said the application note plainly provides that prior criminal conduct for which a sentence was imposed before the conduct charged in the indictment is not relevant conduct. And this court, on the direct appeal, determined that Keyes' 2008 and 2009 convictions, quote, each resulted in a sentence that was imposed prior to the acts constituting the instant federal offense because the indictment and plea agreement specified a conspiracy beginning on or about March 6, 2012. The proper information, whether favorable or how favorable or where it weighs and what balance it might tip or not tip, does not impact this reasoning at all. The court could affirm based upon this reasoning as well. Finally, the district court determined that there was insufficient evidence that Mr. Keyes remained a participant in drug trafficking, a conspiracy throughout his continuous three and a half years in prison, as would be necessary for the 2008 and 2009 conviction, to even potentially be relevant conduct to the offensive conviction in this case. The district court weighed the value of these proffers, and I would submit to this court that Judge Jarvie, who was the judge who handled sentencing, he was the judge who handled the 2255 request, he is in a perfect position to, based upon the totality of the record, make an assessment as to the balance or whether or not these two proffers would tilt the scales in any way. He said that it would not. I do want to move slightly into something else. A lot of what this case is about, if we are talking about whether the balance is shifted by these two proffers, goes to when the conspiracy began in 2012. That's the third independent rationale that I've discussed. What strikes me is the best evidence as to when it began and when Corey Keyes joined the conspiracy for which he was convicted, the offensive conviction, the best evidence is the limited statements by Corey Keyes that we have as part of this record. Certainly, we would expect that a defendant who is convicted of the conspiracy offense would know when the conspiracy began. Well, we have a limited record on that, but what we do have from Corey Keyes himself is the plea agreement. Paragraph 9 of the plea agreement, the defendant admits, quote, starting during or about March 6 of 2012, the defendant and other persons reached an agreement to distribute cocaine. He further admits in the plea agreement, quote, joined at some later time while it was still in effect. That's necessarily true because he was in prison. He released on April 30 of 2012. He admitted that the conspiracy for which he was convicted began March 6 of 2012 and that he joined after. These are his words, and now he's coming back and suggesting, well, the conspiracy is one grand conspiracy. This seems to me to be a case of Mr. Keyes wanting to have his cake and eat it too. He wants to keep the advantages, and there were several advantages in that plea agreement, the lesser quantity, 400 to 500 grams that was stipulated to him in the plea agreement. The government withheld three 851 enhancements in the plea agreement, so he wants to keep those, but he wants to disregard his own statements in that plea agreement. Counsel, why were the proffers not shown to him like before sentencing? Your Honor, for purposes of the issue before the court, the government concedes that they were not disclosed, and so of the three parts of the defense's burden, whether they were disclosed, we would concede that they were not. I would simply tell the court that the government attempted to be as transparent as possible when Mr. Erdahl brought this possibility to the United States' attention, and I believe that there's a letter in the government's appendix to this point, Your Honor. And so knowing the importance of this to Mr. Keyes, to Mr. Erdahl, and to justice itself, when it was brought to our attention, we took the steps that were outlined in that letter because transparency is of the utmost importance to us. Even if late, but go ahead. We would simply ask this court to affirm Judge Jarvie's reasoned opinion. Mr. Keyes was not sentenced to 151 months because these two proffers were not disclosed. He was sentenced to 151 months because he was a career offender, and even if he was not legally a career offender, that was the sufficient but not greater than necessary sentence. The district court, in a reasoned explanation, made that clear twice. We would ask that this court affirm. Thank you, Mr. Kern. Mr. Erdahl. First, I want to say that Mr. Kern was transparent when it was brought to his attention, as he said. I also want to say that I don't believe a remand to Judge Jarvie would be a fruitless exercise. I have the utmost respect for Judge Jarvie. Our careers go way back to when he was a clerk and I was arguing before Judge O'Brien. We have had many cases together. He is the kind of judge who is willing to look at the facts anew and make the proper decision. I have all the confidence in the world that we would get a fair hearing if this court remanded. The bottom line, in his opinion, is correctly stated, that it was not material. But the reason for that lack of materiality is the alternative sentence that Judge Jarvie himself granted, and that alternative sentence was based on a miscalculation. Under Azure, which is cited in the brief, the reasonableness review requires us to first ensure that the district court committed no significant procedural error, such as failing to calculate or improperly calculating the guidelines. What Judge Jarvie did was he started at a point in the guidelines. He didn't really make the kind of guideline determination he should have, but he forgot to take out the career offender. The career offender does two things, as the court is well aware. It raises the base level and it increases the criminal history. We had argued that if you took out the career offender, he would actually start at a level three guideline 21. I believe it was 47 to 56 months. So the magnitude of the upward departure or variance on the part of Judge Jarvie is three times the original sentence, and that's why this court has insisted, for purposes of proper review, that first the guideline has to be properly calculated. Then the variances have to be examined, upward and downward. Then the decision can be made. And to the extent that there is a large variance, then under Solis v. Bernadez, again cited in the case, the farther the district court varies from the presumptively reasonable guideline range, the more compelling the justification based on the section 3553A factors must be. So the other thing I wanted to say in rebuttal is that the whole case was about whether or not he was a career offender. It's not a matter of technicality. It's a matter of law. And the case that was referred to in the application note 8 that's been changed to 5C, that was not a conspiracy case. So the fact that the person in that example had sold to the same party in a state case and been sentenced and then sold to the same party in a federal case, that's not the same as where a conspiracy is alleged. And Judge Jarvie was very clear from the beginning that the conspiracy, the dates of it, and the scope of it would not be determined by how it was filed. In the original complaint, they talk about the conspiracy going back to the early 2000s. But in the indictment, they don't. But Judge Jarvie said, your law enforcement efforts don't decide when the conspiracy started. And I would say it's clear from his rulings they also don't go to when it ended. But didn't he, did Mr. Keyes acknowledge in the plea agreement and at the sentencing this March 6, 2012 date? That was, it's an honor about date and those, and that's what I think Judge Jarvie was addressing. That was in the plea. It was very clear from the time of sentencing that we were alleging a larger conspiracy that went further. And again, that can't be determined by just the way the government charges it or frames the plea. And when Keyes was released, I think one of the points that Mr. Curran was making is that the court hones in on the fact that he resumed his involvement at a very large level within two days. He went to John's Barbershop. He started up again. It was the same conspiracy. This is the man who visited him in prison. By the way, we did get the photos. We couldn't get them by the time of sentencing. We got them from the state. The federal government did not have them. But we got the photos of the two of them there in prison. But we haven't gotten a chance to introduce those photos. We haven't gotten a chance to talk to the officers who interviewed these people because Judge Jarvie speculates that, well, John says he did get back into it, but then he doesn't mention Keyes. Well, was he asked about Keyes at that point? These are the reasons why we have hearings. And I think that no case is more instructive than the one I'm going to send in the 28J letter. I know that case well. After 18 years, we finally got the documents that freed Sherman White after 28 years. When it comes to exculpatory evidence, it's not just what was withheld. It's what might have been done by the attorneys had they been aware of what was going on. The same thing here was true. I argued before Judge Jarvie. I argued about all of these things, and there was evidence that would have supported and corroborated what we were arguing. We were confined to discovery or putting our client on the stand at that point, and now we could go forward at a hearing and, I believe, vindicate that he was, in fact, a member of this conspiracy, that he should not have been considered a career offender. Thank you very much for your time and attention. Thank you, counsel, for the argument. Case number 18-2537 is submitted for decision by the court. Ms. McKee. Case number 18-2908, Andrew Halsey et al. v. Townsend Corporation of Indiana et al.